UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| WHISPERING OAKS WEDDINGS, LLC | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 4:25-cv-248 |
| RRE ANNA PROPERTY, LLC<br>TONY MILLER CONSTRUCTION,<br>TONY MILLER,<br>JWB DESIGN STUDIO, and<br>JEREMY BULLARD | § § § § § § § | JURY TRIAL DEMANDED |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Whispering Oaks Weddings, LLC ("**Plaintiff**"), files this complaint against RRE Anna Property, LLC, Tony Miller Construction, Tony Miller, JWB Design Studio and Jeremy Bullard (collectively, "**Defendants**"), alleging as follows:

### I.
### NATURE OF ACTION

1. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, for Defendants' willful infringement of copyright-protected architectural works.

2. This is also an action for unfair competition, tortious interference with prospective business relations, civil conspiracy, unlawful conversion and unjust enrichment.

### II.
### PARTIES

3. Plaintiff Whispering Oaks Weddings, LLC ("Whispering Oaks Weddings") is a limited liability company duly organized in the State of Texas. Whispering Oaks Weddings primary place of business is located at 910 Red Top Road, Valley View Texas 76272.

4. Defendant RRE Anna Property, LLC ("Anna Property") is a limited liability company duly organized in the State of Texas. Anna Property's primary place of business is located at 5511 Co Rd 424, Anna, TX 75409.

5. Defendant Tony Miller Construction, Inc. ("Tony Miller Construction") is a domestic for-profit corporation incorporated in the State of Texas. Defendant regularly conducts business in Texas and may be served with process through its registered agent, Kimberly French, at 2180 Broken Arrow Lane, Mckinney, Texas, 75071.

6. Defendant Tony Miller is an individual resident of the State of Texas who may be served with delivering service of process to 1240 Hill Street, Van Alstyne, Texas 75495 or wherever else he may be found.

7. Defendant JWB Design Studio, Inc. ("JWB Design Studio") is a domestic for-profit corporation incorporated in the State of Texas. Defendant regularly conducts business in Texas and may be served with process at its primary place of business is located at 202 West Main Street, Suite 103, Gunter, Texas, 75058.

8. Defendant Jeremy Bullard is an individual resident of the State of Texas who may be served with delivering service of process to 230 Pecan Crossing Court, Gunter, Texas, 75058, or wherever else he may be found.

## III.
## JURISDICTION AND VENUE

9. This Court has original and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (acts of Congress relating to copyright).

10. This Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that all defendants are residents of the State of Texas and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## IV.
## FACTUAL ALLEGATIONS

12. Plaintiff is the owner of Whispering Oaks Weddings and event venue located in Valley View, Texas.

13. Plaintiff is a family-owned and family-run business.

14. The owners, Jessica Dixon and Darren Dixon (the "**Dixons**"), planned, designed and constructed Whispering Oaks Weddings Venue beginning in 2016, and finished construction on the venue in 2017.

15. The Owners dreamed of operating a wedding venue on their 30-acre wooded lot that would feature rustic design elements and a cedar barn that would be the perfect destination for numerous weddings, anniversaries and special events.

16. Whispering Oaks Weddings Venue is a recognized wedding venue throughout Northern Texas, and has been featured in numerous publications, including but not limited to: (1) *North Texas Bridal Magazine*; (2) *Gainesville Living*; (3) *Best of weddings in Gainesville* and (4) has received multiple five-star reviews on the Knot Worldwide, a renowned online wedding publication.

17. Whispering Oaks Weddings Venue hosts between seventy-five (75) and eighty (80) events annually.

18. Whispering Oaks Weddings also has over 20,000 followers among its various social media accounts.

19. To date, Whispering Oaks Weddings venue has held over 650 events.

20. In December of 2022, the Dixons began to discuss ideas for constructing a potential wedding chapel on the Whispering Oaks Weddings Venue property.

21. On December 6, 2022, the Dixons communicated via text message with Defendant Tony Miller, the Owner of Defendant Tony Miller Construction, about their interest in adding a wedding chapel to the Whispering Oaks Weddings Venue.

22. In May of 2023, Defendant Tony Miller walked through the proposed site for the chapel with the Dixons.

23. Defendant Tony Miller and the Dixons discussed the potential build for the chapel.

24. On June 5, 2023, Defendant Tony Miller then referred the Owners to Defendant JWB Design Studio to start creating plans for the chapel.

25. Defendant JWB Design Studio is owned and operated by Defendant Jeremy Bullard.

26. However, after meeting with Defendant Jeremy Bullard and discussing the plans for the Whispering Oaks Weddings Venue chapel, the Dixons ultimately chose to use a different architect to help develop their plans for the chapel.

27. Throughout June and August of 2023, The Dixons worked on the overall design of the chapel independently.

28. The Dixons had mapped out everything that they wanted the chapel to include regarding the design, sizing, layout and other general features that the chapel would consist of.

29. Originally, the Dixons envisioned an open-air concept, however, they eventually decided to enclose the chapel and include air conditioning in the structure.

30. The Dixons further designed the dimensions they wanted for the chapel based upon pew size, the number of pews, width of the aisles, and other structural features.

31. Defendant Tony Miller then provided the Dixons with the contact information of architect Chris Dotson of Dotson Drafting & Design, to assist in creating formal plans for their design of the Whispering Oaks Weddings Venue chapel.

32. On October 12, 2023, the Dixons contracted with Dotson Drafting & Design to formally create the architectural plans for the Whispering Oaks Weddings Venue chapel based on the Dixons ideas and specifications.

33. Dotson Drafting & Design created and provided design plans to the Dixons.

34. Each page of the design plans provided from Dotson Drafting & Design to the Plaintiff was labeled with the caption "*A Custom Plan For*: Whispering Oaks Wedding Venue".

35. On October 30, 2023, Defendant Tony Miller requested a copy of the design plans from Dotson Drafting & Design so that he could bid on the construction of the Whispering Oaks Weddings Venue chapel.

36. On February 18, 2024, the Dixons received a bid from Defendant Tony Miller Construction for the build of the chapel.

37. On February 21, 2024, Defendant Tony Miller sent an updated bid to the Dixons.

38. On March 11, 2024, Chris Dotson passed away.

39. Shortly after this, the Dixons engaged in numerous text communications with Defendant Tony Miller regarding the status of the chapel.

40. Defendant Anna Property owns and operates the River Road Venue, a competing wedding venue located in Anna, Texas.

41. In August of 2024, Jessica Dixon reached out to Lana Gilliland, the manager of the River Road Venue, after learning that Defendant Anna Property had hired Defendant Tony Miller to assist with its construction of a chapel on their venue.

42. On August 16, 2024, Lana Gilliland sent Jessica Dixon three-dimensional renderings of the design of the River Road Venue's chapel.

43. After viewing the renderings, the Dixons noticed that the River Road Venue chapel design contained remarkable similarities to their own design for the Whispering Oaks Wedding Venue Chapel.

44. The Dixons expressed their concerns about the similarities between the two competing chapels to Lana Gilliland.

45. Immediately after this, the Dixons called and sent text messages to Defendant Tony Miller to confirm whether he shared the Whispering Oaks Wedding Venue chapel design plans with Defendant Anna Property.

46. As discussed in greater detail below, Defendant Tony Miller later confirmed that he had shared the plans with Defendant Anna Property.

47. While many of the wedding venues located throughout northern Texas have wedding chapels on site, none of them bear such identical similarities such as the ones shown in the floorplans of the Whispering Oaks Weddings Venue chapel and the River Road Wedding Venue chapel.

48. The design and structural floor plans for the River Road chapel share the identical features with the Whispering Oaks Wedding Venue chapel, which includes following:

   a. the four windows in front of the chapels are done in the same gothic style;
   b. there are the same number of windows on both the left and right side of the chapels;
   c. the placements of the windows on each side of the chapels are the same;
   d. the rear bottom row of windows are the same size;
   e. there are the same number of total doors and placements on both floorplans;
   f. the placements of the top windows are identical;
   g. the total bottom square footage of the chapels are identical;
   h. the total width of the chapels are identical;
   i. roof and height of building (excluding the bell towers) are the same;
   j. the total square footage of the foyer area is the same;
   k. the total square footage of the ceremony area is the same;
   l. there is the same distance between each window in the chapels;
   m. the location of the side doors are the same;

      n. the wood beams that go across the chapel ceilings are identical; and

      o. the raised platform in both chapels are in the same location.

49. The Dixons also designed the doors in the ceremony area to be moved closer to the ceremony area doors, due to the fact that local building code allowed the chapel design to bypass the inspection for placement of doors relating to potential fire hazards.

50. Notably, the River Road chapel bears the identical location of the doors in the ceremony area.

51. The floorplans below reflect the identical design of both chapels.





*Whispering Oaks Weddings Venue chapel Floor Plan*



*River Road Floorplan*

52. On August 22, 2024, Defendant Tony Miller called the Dixons and admitted that he did in fact shared the design plans with Defendant Anna Property.

53. Defendant Tony Miller expressed to the Dixons that he would make sure that the River Road Venue chapel would not begin construction without approval of the design plan from the Dixons.

54. Defendant Tony Miller then told Jessica Dixon that he would set up a meeting with the owners of River Road Venue and the Dixons in order to resolve this issue.

55. However, Dixons declined to meet with the representatives of River Road Venue. Defendant Tony Miller stated to the Dixons that concrete would not be poured for the River Road Venue chapel until the aforementioned issues were resolved.

56. Jessica Dixon then contacted Defendant Jeremy Bullard after learning that he was hired to construct the chapel for River Road Venue.

57. Jeremy Bullard informed Jessica Dixon that Defendant JWB Design Studio received the Whispering Oak Weddings Venue's chapel plans from Defendant Tony Miller, and that Defendant Tony Miller asked that Defendant Jeremy Bullard make very few changes to the plans in order to sell the Whispering Oak Weddings Venue's plans as an entirely new plan to Defendant Anna Property.

58. At no time did Chris Dotson, Chris Dotson's legal heir and representative, Plaintiff, or the Dixons provide Defendants with the right to use the plans to construct another wedding venue.

59. On November 5, 2024, Plaintiff sent a notice of cease and desist to Defendant Tony Miller, stating that he provided Defendant Anna Property with Plaintiff's chapel design without Plaintiff's consent.

60. On November 6, 2024, Plaintiff sent a notice of cease and desist to Defendant Anna Property, informing Defendant that it received Plaintiff's design from Defendant Tony Miller Construction without the consent of Plaintiff and requesting that Defendant Anna Property cease construction on its wedding chapel.

61. On November 18, 2024, Plaintiff received a response regarding its notice of cease and desist to Defendant Anna Property.

62. Defendant Anna Property refused to acknowledge the identical structure between the two chapels and asserted that the plans were "significantly different" despite the glaringly obvious style, design, and layout of the chapels.

63. Defendants intentionally stole Plaintiff's design and infringed upon their copyright-protected plans, unlawfully converted intellectual property, and tortiously interfered with Plaintiff's prospective business relations.

64. To further advance their own interests and unjustly enrich themselves, Defendants made minor changes to the design of the River Road chapel in a transparent attempt to avoid liability for their tortious actions.

65. The architectural plans created by Chris Dotson have been registered with the U.S. Copyright Office, Registration Number VA0002436110, effective February 25, 2025, with a registration decision date of March 6, 2025 (the "**Copyright**").

66. On March 6, 2025, Mr. Dotson's spouse, as his heir and legal representative, assigned all rights to the Copyright, including the right to sue for accrued causes of action for infringement, to Plaintiff.

## V.
## COUNT 1
## COPYRIGHT INFRINGEMENT
## (ALL DEFENDANTS)

67. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

68. Plaintiff is the owner of the right, title, and interest in the Copyright.

69. Defendants willfully infringed upon the Copyright by copying and distributing the Plaintiff's design, without Mr. Dotson's or Plaintiff's authorization.

70. As a result, Defendants are liable to Plaintiff for willful infringement under 17 U.S.C. § 501, *et seq*.

71. Plaintiff has no adequate remedy at law for Defendants' wrongful conduct in that: (1) the Copyright is unique and valuable property that has no readily determinable market value; (2) the infringement by Defendants constitutes interference with Plaintiff's goodwill and customer relations; and (3) Defendants' wrongful conduct and the damage resulting therefrom is continuing.

72. Therefore, pursuant to 17 U.S.C. § 502, Plaintiff is entitled to temporary and permanent injunctive relief to restrain infringement of the Copyright.

73. Plaintiff has suffered, and continues to suffer, substantial and irreparable damage to its business reputation and goodwill.

74. Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to actual damages and any additional profits of the infringers attributable to the infringement.

75. Unless Defendants are immediately enjoined from this tortious interference, Plaintiff will suffer immediate and irreparable harm and be placed at a significant competitive disadvantage. Plaintiff therefore seeks temporary and permanent injunctive relief, as well as actual damages, interest, and costs.

## VI.
### COUNT 2
### UNFAIR COMPETITION BY MISAPPROPRIATION
### (DEFENDANTS TONY MILLER, TONY MILLER CONSTRUCTION, & ANNA PROPERTY)

76. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

77. "The elements of a cause of action for unfair competition by misappropriation in Texas are (1) the creation of plaintiff's product through extensive time, labor, skill and money, (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (3) commercial damage to the plaintiff." *Best Glide Aviation Survival Equip., Inc. v. Tag-Z, LLC*, No. 1:23-cv-1080-DAE, 2024 U.S. Dist. LEXIS 127540, at *19 (W.D. Tex. 2024).

78. Plaintiff created the plans, through the investment of time, labor, skill and money, which constitute a product: a unique wedding venue.

79. Defendants Tony Miller, Tony Miller Construction, and Anna Property have used Plaintiff's product in competition with Plaintiff, thereby gaining a special advantage or free ride, and their use has resulted in commercial damage to Plaintiff.

80. Defendants Tony Miller, Tony Miller Construction, and Anna Property committed unfair competition by misappropriation with respect to Plaintiff and are therefore liable to Plaintiff for actual damages.

81. These Defendants' unfair competition by misappropriation has caused Plaintiff to suffer damages, including harm to its goodwill associated with the Copyright, and lost future profits and sales.

## VII.
### COUNT 3
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### (ALL DEFENDANTS)

82. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

83. The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Kroger Specialty Infusion CA, LLC v. Sturns*, No. 05-22-01276-CV, 2024 Tex. App. LEXIS 3433, 2024 WL 2205660, at *6 (Tex. App.—Dallas May 16, 2024, no pet.) (mem. op.) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)).

84. Defendants' conduct was tortious, because it constituted infringement of the copyright over the plans, which constitute a protected "architectural work" under federal law. *See* 17 U.S.C. § 102(a)(8). Accordingly, unlawfully sharing and using those plans constituted an independently tortious or unlawful act by Defendant.

85. Defendants' tortious and unlawful conduct and actions have caused Plaintiff to suffer damages, including harm to its goodwill associated with the Copyright, and lost future profits and sales.

## VIII.
### COUNT 4
### UNLAWFUL CONVERSION
### (DEFENDANTS TONY MILLER & TONY MILLER CONSTRUCTION)

86. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

87. Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. The elements of unlawful conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (3) the plaintiff made a demand for the property; and (4) the defendant refused to return the property. *Bacon Tomsons, Ltd. v. Chrisjo*

*Energy, Inc.*, No. 01-15-00305-CV, 2016 Tex. App. LEXIS 8558, at *1 (Tex. App.—Houston [1st Dist.] Aug. 9, 2016, no pet.)

88.     Defendant Tony Miller and Tony Miller Construction unlawfully converted Plaintiff's intellectual property.

89.     Defendant Tony Miller admitted that he unlawfully shared Plaintiff's intellectual property with Defendant Anna Property.

90.     To further advance their own interests, Defendant Tony Miller Construction made minor changes to the design of the River Road chapel to avoid liability for its actions.

91.     Defendants' unlawful conversion has caused—and will continue to cause– injury to Plaintiff, although such damages are not readily ascertainable or measurable.

## IX.
### COUNT 5
### CIVIL CONSPIRACY
### (ALL DEFENDANTS)

92.     All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

93.     The Texas Supreme Court has defined the elements of civil conspiracy as: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)); *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *see also Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("Civil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort."). *Malone v. Harden*, 668 S.W.3d 39, 43 (Tex. App.—Houston [1st Dist.] 2022, no pet.).

94.     Defendants were members of a combination of two or more persons, the object of which was to accomplish the unlawful purpose of infringing on copyright-protected architectural works.

95.     Defendants had a meeting of the minds on this object or course of action.

96.     At least one of the members of the conspiracy committed an unlawful, overt act(s), as described above, to further the object or course of action.

97.     As a proximate result of such wrongful act(s), Plaintiff has suffered injury.

98.     Plaintiff seeks actual damages, exemplary damages, interest, and costs against Defendants, jointly and severally.

## X.
### COUNT 6
### UNJUST ENRICHMENT
### (DEFENDANT ANNA PROPERTY)

99.     All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically set forth herein.

100.    Unjust enrichment occurs when one person has obtained a benefit from another through fraud, duress, or the taking of an undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

101.    Defendant Anna Property had knowledge that Plaintiff's plans were unlawfully obtained and shared.

102.    Despite this, Defendant Anna Property purchased Plaintiff's plans from Defendants Jeremy Bullard, Tony Miller, and JWB Design Studio and used Plaintiff's plans as its own.

103.    As such, Defendant would be unjustly enriched if it was allowed to continue to retain the benefit of Plaintiff's plans from the wrongful conversion of intellectual property.

## XI.
### PRAYER

WHEREFORE, Plaintiff prays that Defendants be cited to appear and answer and that Plaintiff be granted judgment against Defendants for each of the following:

(a)     That the Court enter judgment against Defendants that they have willfully infringed the Copyright under 17 U.S.C. § 501 *et seq.*;

(b)     That the Court issue preliminary and permanent injunctive relief against Defendants and their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants be enjoined and restrained from:

      a. infringing on the Copyright; and

      b. imitating, copying, or making any other infringing use or infringing distribution of Plaintiff's plans and designs or variations thereof;

(c)     That Plaintiff be awarded actual damages in an amount to be proven at trial;

(d)     That Plaintiff be awarded additional profits of the infringers attributable to the infringement of the Copyright;

   (e) Plaintiff's reasonable attorneys' fees, and if this cause requires a trial, for Plaintiff's reasonable attorneys' fees in the prosecution or defense of same; and an additional sum (or sums) if this cause is appealed as specified more fully above;

   (f) all pre-judgment interest to which Plaintiff is entitled at the highest allowable rate;

   (g) all post-judgment interest to which Plaintiff is entitled at the highest allowable rate;

   (h) all costs of court;

   (i) such orders and judgments affecting the obligations of Defendants and the rights of Plaintiff as this Honorable Court may find appropriate under the circumstances; and

   (j) such other relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

            Respectfully Submitted,

            **LOVEIN | RIBMAN, P.C.**

            By: /s/ *David N. McDevitt*
              David N. McDevitt
              State Bar No. 24117433
              dmcdevitt@loveinribman.com

            1225 S. Main Street, Suite 200
            Grapevine, Texas 76051
            (817) 442-5106 (Telephone)
            (817) 442-5108 (Facsimile)

            **ATTORNEYS FOR PLAINTIFF**